UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITE,<br><br>        Petitioner,<br><br>   vs.<br><br>M. A. STANSIL,<br><br>        Respondent. | No. 2:15-cv-0242-EFB P (TEMP)<br><br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Petitioner challenges a disciplinary conviction that he received on June 28, 2013 for "use of any drug not prescribed for the individual by the medical staff."  He seeks federal habeas relief on the following grounds: (1) prison officials' actions in failing to inform him that his urine had tested positive for Methadone in time for him to obtain a second drug test to verify those results denied him the right to present exculpatory evidence at his prison disciplinary hearing and violated prison regulations; and (2) prison staff's delay in serving him with an "incident report" after his urine tested positive for Methadone violated prison regulations.  Upon careful consideration of the record and the applicable law, and for the reasons that follow, petitioner's application for habeas corpus relief must be denied.

/////

/////

**I. Background**

Petitioner is currently serving a 400-month term of imprisonment following his plea of guilty to multiple charges of drug-related offenses and of being a felon in possession of a firearm. ECF No. 13 (Declaration of Board of Prison (BOP) paralegal specialist Jennifer Vickers), at 2. On March 23, 2013, petitioner provided a urine sample for purposes of a BOP drug test. ECF No. 13-2 at 3. The results came back positive for the presence of Methadone. *Id.* at 4. On March 25, 2013, after the initial results were subjected to a second drug confirmation test, which also came back positive, the BOP sent petitioner's urine sample to Phamatech Laboratories for testing. *Id.* at 3, 4.

On April 11, 2013, Phamatech Laboratories sent an email notification to the prison that petitioner's urine sample had tested positive for Methadone. *Id.* Due to "an administrative oversight," this email was not reviewed by prison staff until May 31, 2013. On that same day, after medical staff verified that petitioner was not taking any medication that would cause a positive urine test for Methadone, reporting employee N. Boyd prepared an Incident Report describing the facts related above. She attached to that report the April 11, 2013 email from Phamatech Laboratories and a memorandum explaining why the urine test result from Phamatech Laboratories was not discovered until May 31, 2013. *Id.*; ECF No. 13-3 at 2. Petitioner was served with the Incident Report on the same day. ECF No. 13-3 at 2.

On June 2, 2013, petitioner filed an "Inmate Request to Staff," in which he requested a blood test to determine whether he had used Methadone. ECF No. 1 at 14. On June 20, 2013, petitioner received a response to this request, in which he was informed that:

> A review of this matter reveals you are over the thirty day period since the last test indicating the use of any form of methadone. Typically, a blood test will not show any traces of methadone a month after the use of it; therefore, a blood test is not warranted as a result of timeliness.
>
> Additionally, Health Services has reviewed your medical record and there's no record of any medication before your test that would indicate the use of methadone.

*Id.*

/////

2

The disciplinary hearing on the Incident Report was held on June 28, 2013.  ECF No. 13-2 at 2.  Petitioner appeared at the hearing via video conference and stated he was ready to proceed.  *Id.*  Petitioner was advised of his rights by the disciplinary hearing officer (DHO) and he stated that he understood those rights.  *Id.*  He also stated that he had received his copy of the Incident Report.  *Id.*  Petitioner waived his right to a staff representative and to present witnesses.  *Id.*  Petitioner denied that he had used Methadone.  *Id.*  When asked if he wanted to make further comment, he stated, "I never took Methadone and anything with it.  There must have been something wrong with the test."  *Id.*

Petitioner was found guilty of "the prohibited act of Use of any Drug not Prescribed for the Individual by the Medical Staff."  *Id.* at 3.  In reaching his verdict, the DHO relied on: (1) the BOP Chain of Custody form for petitioner's urine sample; (2) the lab report issued by Phamatech Laboratories; (3) the memorandum from BOP medical staff to the effect that petitioner was not taking any medication that would cause a positive urine test for Methadone; (4) the memorandum from reporting employee Boyd; and (5) the April 11, 2013, email from Phamatech Laboratories to the effect that petitioner's urine sample had tested positive for Methadone.  *Id.* at 2-4.  At the hearing, the DHO discussed with petitioner "the reason for the delay" in processing the results of the urine test.  Specifically, he told petitioner that "due to an administrative oversight on the part of [prison] staff," the email from the lab indicating that petitioner's urine sample had tested positive for Methadone was not opened until more than one month after it was received.  *Id.* at 3.  The hearing officer "found that this delay did not warrant the expungment of your incident report and that it did not harm your ability to prepare or assert a defense."  *Id.*

The DHO took into consideration petitioner's statement that he had never taken Methadone and that the results of the lab test were inaccurate.  *Id.*  However, he found that Ms. Boyd's incident report was more credible than petitioner's denial of culpability.  He also found that Ms. Boyd was clear about what had transpired and that she "had no reason . . . to falsify her statement in which she wrote that subsequent to you providing a prior use urine sample, laboratory testing revealed that you had Methadone present in your urine, which is indicative of your using Methadone in the recent past."  *Id.*

3

1    The DHO also noted that petitioner's urine had been subjected to a preliminary drug test
2 at the prison, which tested positive, and was also subjected to a confirmation test, which also
3 tested positive. *Id.* at 4. After these tests had been conducted, the urine specimen was sent to
4 Phamatech Laboratories for a "confirmation test." *Id.* According to the DHO, "the test
5 performed by this laboratory is very accurate and is performed at a much higher level of accuracy
6 and specificity than the initial drug test cup screening." *Id.* The DHO also considered that
7 petitioner had a prior prison disciplinary conviction for use of marijuana. *Id.* Finally, the DHO
8 determined "that the greater weight of evidence in this case is given to the report writer, due to
9 the greater credibility given to staff, which are impartial and have no reason to provide false or
10 inaccurate information." *Id.*
11    As punishment for his disciplinary conviction, petitioner was assessed 41 days loss of
12 time credits and placement in disciplinary segregation for 30 days. He also received various
13 restrictions on prison programs and amenities. *Id.*
14    Petitioner challenged his disciplinary conviction in a "Regional Administrative Remedy
15 Appeal." ECF No. 1 at 9. Petitioner stated that he had "never ever seen Methadone nor opium in
16 his life," and he argued that service of the incident report after such a lengthy delay prevented
17 him from obtaining a blood test to demonstrate his innocence. *Id.* This appeal was denied in a
18 reasoned decision, on the grounds that petitioner's conviction was supported by sufficient
19 evidence and that the incident report was timely because it was issued to petitioner on the same
20 day staff became aware of the email from Phamatech Laboratories. *Id.* at 10. Petitioner
21 subsequently appealed the decision by the Regional Administrator to the General Counsel in the
22 Central Office. *Id.* at 11. Petitioner provides evidence that the Central Office granted itself
23 additional time to respond. *Id.* at 12. The actual response by the Central Office does not appear
24 in the record before this court. However, respondent concedes that petitioner exhausted his
25 administrative remedies with respect to the claims before the court.
26 /////
27 /////
28 /////

II. Analysis

    **A. Standard of Review Applicable to Claims Brought Pursuant to 28 U.S.C. § 2241**

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that his custody violates the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). A federal prisoner who challenges the validity or constitutionality of his underlying conviction must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006). On the other hand, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence, as petitioner does here, must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864-65 (9th Cir. 2000); *see also Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008).

    **B. Proper Respondent**

The previously named respondent was Rafael Zuniga. In a habeas challenge, "the proper respondent is the warden of the facility where the prisoner is being held." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). *See also Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 494-95 (1973) (stating, in a habeas corpus action pursuant to 28 U.S.C. § 2241, "The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody."). Petitioner is currently an inmate at the Federal Correctional Institution in Florence, Colorado (FCI Florence). Accordingly, the court now substitutes in the correct respondent, M. A. Stansil, the Warden of FCI Florence.

    **C. Venue**

Pursuant to 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus must be brought in the district court where the petitioner is confined or in the district where he was convicted and sentenced. Venue was proper in the Eastern District of California when this action was filed because petitioner was then incarcerated at FCI Herlong, which is in the Eastern District. Petitioner has since been transferred to FCI Florence, which is in Colorado. However, this court may continue to exercise jurisdiction over this action, notwithstanding petitioner's transfer. *See Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) ("'[J]urisdiction attaches on the initial filing

for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change'") (quoting *Santillanes v. United States Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985)); *accord Smith v. Campbell*, 450 F.2d 829, 834 (9th Cir. 1971) ("We hold that by reason of the fact that the petitioner and his custodian, his immediate commanding officer, were within the territorial jurisdiction of the district court at the time the petition for writ of habeas corpus was filed, the district court had jurisdiction to determine the merits of the litigation . . . subsequent involuntary removal of the petitioner from the district does not defeat that jurisdiction when those having present custody of the petitioner are subject to the process of the court").

### D. Due Process in the Disciplinary Hearing Context

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see also Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The Ninth Circuit has observed that prison disciplinary proceedings command the least amount of due process along the prosecution continuum. *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977).

An inmate is entitled to no less than 24 hours advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. *See Wolff*, 418 U.S. at 563. The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." *Id.* at 571. An inmate also has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

The decision rendered on a disciplinary charge must be supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. A finding of guilt on a prison disciplinary charge cannot be "without support" or "arbitrary." *Id.* at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. *Powell v. Gomez*, 33 F.3d 39, 40 (9th Cir.

1994) (citing *Hill*, 472 U.S. at 455-56 and *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987)). *See also Burnsworth v. Gunderson*, 179 F.3d 771, 773 (9th Cir. 1990); *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied in a particular case does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. *Toussaint v. McCarthy*, 801 F.2d 1080, 1105 (9th Cir. 1986), *abrogated in part on other grounds* by *Sandin v. Connor*, 515 U.S. 472 (1995). Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. *Hill*, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. *Toussaint*, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." *Hewitt v. Helms*, 459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." *Washington v. Harper*, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." *Hill*, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. *Wolff*, 418 U.S. at 560-63.

**III. Petitioner's Claims**

    **A. Ground One**

        **1. Background**

In his first ground for relief, petitioner claims that the BOP's delay in informing him that he had a right "to request a blood test that would have exonerated him" violated his right to present exculpatory evidence at the disciplinary hearing. ECF No. 1 at 6. Petitioner cites 28 C.F.R. § 541.5(a), which provides:

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident

7

and the prohibited act(s) you are charged with committing. You will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

Petitioner argues that prison staff became aware immediately after March 23, 2013, when his urine sample failed a preliminary "cup test" for the presence of contraband, that he may have committed a prohibited act. *Id.* Petitioner also notes that 28 C.F.R. § 550.31(b) provides that if institution staff determine that there is no justifiable reason for a positive urine test result, "staff shall file an incident report." *Id.* He argues that he should have received an incident report pursuant to this prison regulation immediately after his urine sample failed the preliminary drug test on March 23. *Id.* at 6-7. Instead, he received no notice that he was under investigation for possible use of Methadone until after more than two months had passed, when it was too late to verify the results of his urine test.

Petitioner also argues that prison staff failed to inform him that he had a right to request his own blood test. *Id.* at 7. He states that this oversight prejudiced him because by the time he was advised of the charges against him and the positive urine test, it was too late "for a blood test result to be admissible during disciplinary proceedings." *Id.* He contends that the drugs identified in the urine specimen "did not originate from a sample of his urine" and that, in any event, opium and Methadone are "virtually unheard of within BOP facilities." *Id.* In summarizing his claim, petitioner argues that he was "denied his due process right to present available exonerating blood samples, when on March 23, 2013, he was denied his right to timely submit a blood sample which would have proven that he is innocent." *Id.* at 7-8. Petitioner requests that the sanctions imposed on him for his disciplinary conviction "be vacated." *Id.* at 8.

### 2. **Analysis**

This court finds that the requirements of procedural due process were satisfied with regard to petitioner's disciplinary proceedings. The report of the disciplinary proceedings states, and petitioner does not deny, that petitioner received all applicable reports, including the incident report, at least 24 hours in advance of the hearing. ECF No. 13-2 at 2. Petitioner was also given a written statement of the evidence relied upon by prison officials and the reasons for the disciplinary action taken against him. *Id.* at 5.

8

There was also "some evidence" supporting petitioner's disciplinary conviction. As described above, the disciplinary hearing officer who found petitioner guilty of this charge relied on: (1) the BOP Chain of Custody form for petitioner's urine sample; (2) the lab report issued by Phamatech Laboratories; (3) the memorandum from BOP medical staff to the effect that petitioner was not taking any medication that would cause a positive urine test for Methadone; (4) the memorandum from reporting employee Boyd; and (5) the April 11, 2013, email from Phamatech Laboratories to the effect that petitioner's urine sample had tested positive for Methadone. *Id.* at 2, 3, 4. This material constitutes "some evidence" to support petitioner's disciplinary conviction. *See, e.g., Jones-Heim v. Reed*, 241 F. App'x 359, 2007 WL 1748190 at *2 (9th Cir. June 6, 2007) (Because petitioner tested positive for drugs in the initial drug test, the "some evidence" standard was met under *Hill*, and his application for habeas corpus was denied); *White v. Croswell*, No. 91-15659, 1992 WL 116292, at *3 (9th Cir. May 29, 1992) (a positive urinalysis test proves some evidence of intoxication regardless of the chain of custody; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000), as amended (Aug. 18, 2000) (same).

The essence of petitioner's due process claim is that he was denied the right to present documentary evidence in his defense because he was not given notice of the initial positive urine test in time to obtain another test to refute those initial results. As pointed out by respondent, however, numerous courts have held that a prisoner does not have a constitutional right to an additional drug test to verify the results of an initial positive test. *See, e.g., Henson v. U.S. Bureau of Prisons*, 213 F.3d 897 (5th Cir. 2000) (prisoner did not have a due process right to a second test after first urinalysis test came back negative); *Harrison v. Dahm*, 911 F.2d 37, 41 (8th Cir. 1990) (due process does not require prison officials to provide a drug re-test or to provide an inmate with the documentary evidence of the results); *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986) (although inmates are permitted to present a defense, "[s]tates need not implement all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings"); *Cato v. Ives*, No. CIV. 12-193-GFVT, 2013 WL 1856101, at *5 (E.D. Ky. Apr. 30, 2013) ("A prisoner also has no protected due process right in obtaining outside scientific or laboratory testing of evidence to be used against him");

*Manfredi v. United States*, No. CIV. 12-1905 RMB, 2012 WL 5880343, at *6 (D.N.J. Nov. 20, 2012) (no due process right to obtain a second, independent lab test. Accordingly, even if petitioner had been notified in a timely manner of the laboratory results, he was not entitled to a second drug test to confirm those results.

Even assuming arguendo that petitioner had the right to a second drug test, he has failed to demonstrate that the BOP's error in failing to notify him in time to obtain another test resulted in prejudice. Petitioner is entitled to habeas relief on this due process claim only if the alleged error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). *See Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (a federal court must assess the prejudicial impact of an error under the *Brecht* standard in all habeas cases). The erroneous denial of the right to present evidence at a disciplinary hearing is subject to harmless error review. *Knight v. Evans*, No. C 05-3670 SBA (PR), 2008 WL 4104279, at *14 (N.D. Cal. Sept. 4, 2008) (citing *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (joining the Second, Fourth, and Seventh Circuits applying harmless error review to disciplinary proceedings in federal prisons). In the absence of evidence that a second drug test would have tested negative for the presence of Methadone, this court cannot find that the staff's failure to alert him to the positive test in time to obtain another test had a substantial and injurious effect or influence on the DHO's verdict. Petitioner's unsupported allegations that he is innocent of the charges fail to establish that the evidence supporting his conviction was insufficient. *See Jones v. Gomez*, 66 F.3d 199, 204 (9th Cir. 1995) ("conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") Further, any independent testing of the urine sample would be of little consequence in a prison disciplinary proceeding. At best, such evidence could be used to attack the accuracy of the prison's testing procedures. It would not discount the fact that "some" evidence supports the conclusion of the disciplinary board, which is all that the constitution requires.

For the foregoing reasons, petitioner is not entitled to relief on his due process claims.

/////

/////

**B. Ground Two**

In his second ground for relief, petitioner claims that "BOP's staff 69 day delay in serving Mr. White the incident report went far beyond what should be reasonable under 28 C.F.R. § 550.31(b)." ECF No. 1 at 8. Petitioner argues that an incident report "should have been issued immediately." *Id.* He contends that "because the BOP abused its discretion under Section 550.31(b) by not issuing an incident report on March 23, 2013, the disciplinary sanctions should be vacated." *Id.*

Petitioner's second claim alleges solely a violation of prison regulations. Petitioner's argument that prison staff violated a prison regulation in failing to issue him an incident report in a timely manner is not cognizable in this federal habeas corpus proceeding. *See Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) and *Estelle v. McGuire*, 502 U.S. 62, 67, 72-73 (1991)); *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) ("[A] prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met") (citations omitted)). Here, petitioner received the incident report at least 24 hours prior to his disciplinary hearing. Accordingly, constitutional minima were met.

**IV. Conclusion**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that the Clerk of Court is directed to randomly assign a United States District judge to this action.

Further, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file

11

1 objections within the specified time may waive the right to appeal the District Court's order.
2 *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.
3 1991). In his objections petitioner may address whether a certificate of appealability should issue
4 in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing
5 Section 2254 Cases (the district court must issue or deny a certificate of appealability when it
6 enters a final order adverse to the applicant).

7 DATED: July 25, 2016.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

12